**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE DICK'S SPORTING GOODS, INC. SECURITIES LITIGATION | Civ. Action No. 2:24-cv-00196-NR-KT<br><br>CLASS ACTION<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF OBJECTIONS TO MAGISTRATE JUDGE'S REPORT & RECOMMENDATION** |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................2

    I.      PLAINTIFFS FAIL TO SHOW ANY ACTIONABLE
           MISSTATEMENTS. ..................................................................................................2

    II.     PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF
           SCIENTER. ...............................................................................................................6

          A.     Plaintiffs fail to show that any stock sales support motive. .........................6

          B.     Plaintiffs fail to show they otherwise plead a strong inference of
               scienter. ....................................................................................................8

    III.    THE TD COWEN REPORT IS NOT A CORRECTIVE DISCLOSURE. ...........10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Warren Police & Fire Ret. Sys.* v. *Prudential Fin., Inc.*,
70 F.4th 668 (3d Cir. 2023) .................................................................................. 4 & n.4

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi.* v. *JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009).................................................................................................5

*Frankfurt-Tr. Inv. Luxemburg AG* v. *United Techs. Corp.*,
336 F. Supp. 3d 196 (S.D.N.Y. 2018)...................................................................................7

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999)..........................................................................................7 n.8, 9

*In re Aetna, Inc. Sec. Litig.*,
617 F.3d 272 (3d Cir. 2010)...................................................................................2, 3, 5

*In re Astea Int'l Inc. Sec. Litig.*,
2007 WL 2306586 (E.D. Pa. 2007) ..................................................................6, 7 n.8

*In re Finisar Corp. Sec. Litig.*,
646 F. App'x 506 (9th Cir. 2016) ......................................................................6 n.6

*In re Five Below, Inc. Sec. Litig.*,
2025 WL 2447794 (E.D. Pa. 2025) ......................................................................9

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
2015 WL 4469143 (D.N.J. 2015) ...............................................................3 n.3, 9

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*,
543 F.3d 150 (3d Cir. 2008)...........................................................................4

*In re Merck Co., Inc., Sec., Derivative & "ERISA" Litig.*,
2006 WL 8460903 (D.N.J. 2006) ...........................................................7 n.8

*In re Mylan N.V. Sec. Litig.*,
2023 WL 3539371 (W.D. Pa. 2023).................................................... 4 & n.4

*In re Party City Sec. Litig.*,
147 F. Supp. 2d 282 (D.N.J. 2001) ...............................................6, 7 n.9

*In re Radian Sec. Litig.*,
612 F. Supp. 2d 594 (E.D. Pa. 2009) ...........................................7 n.9

*In re Urb. Outfitters, Inc. Sec. Litig.*
103 F. Supp. 3d 635 (E.D. Pa. 2015) .................................................................................5

*Inst'l Invs. Grp.* v. *Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009)................................................................................2, 3, 7 n.8, 9

*KBC Asset Mgmt. NV* v. *3D Sys. Corp.*,
2016 WL 3981236 (D.S.C. 2016).................................................................................6 n.6

*Martin* v. *GNC Holdings, Inc.*,
2017 WL 3974002 (W.D. Pa. 2017), *aff'd*, 757 F. App'x 151 (3d Cir. 2018) ..........................7

*Mun. Emps.' Ret. Sys. of Mich.* v. *Pier 1 Imps., Inc.*,
935 F.3d 424 (5th Cir. 2019) ................................................................. 9-10 & n.12

*Novak* v. *Kasaks*,
216 F.3d 300 (2d Cir. 2000)................................................................................. 5-6

*Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)................................................................................. 4 & n.4, 5 n.5

*Pearlstein* v. *BlackBerry Ltd.*,
93 F. Supp. 3d 233 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 23 (2d Cir. 2016)..........................10

**Statutes and Rules**

15 U.S.C. § 78u-5 ...........................................................................................................3

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition fails to identify any particularized allegations to address the Complaint's many pleading failures and only underscores their inability to meet PSLRA requirements.  Plaintiffs do not even address many of Defendants' arguments or controlling precedents at all, and seek to entirely avoid their own pleaded definitions of inventory terms—all of which show that the challenged statements are inactionable forward-looking statements and opinions (not present-tense fact statements), and immaterial statements of corporate optimism.

Plaintiffs also fail to show that they plead anything close to scienter for securities fraud. Plaintiffs fail to identify any particularized allegations showing that DSG's executives' statements concerning its overall, nationwide inventory health were not sincere judgments at the time. Plaintiffs do not dispute that even a large volume of inventory can be "healthy" and "well-positioned," as long as management assesses that it can be sold at sufficient prices over time— particularly where a business, as alleged here, is seasonal and where products like kayaks and weight sets (as DSG disclosed) do not go obsolete for a long period.  Yet Plaintiffs point to no particularized allegations showing Defendants did not sincerely assess that DSG would be able to sell its outdoor and fitness inventory over time without material impact on overall profitability— including during the upcoming 2023 "peak" summer season.  And other pled facts and statements, including DSG's disclosed belief that consumers had made "lasting lifestyle changes" supporting long-term stronger demand, showed DSG's confidence in the outdoor and fitness categories.

Plaintiffs now claim with hindsight that those judgments—reached in unprecedented circumstances following a global pandemic, and expressed subject to specific cautions about inventory risk—must have been wrong (and knowingly so) because DSG ultimately discounted outdoor inventory at the end of the Class Period, after experiencing difficult and evolving market

and promotional conditions during the "peak" summer period.  That is not securities fraud.  It is exactly the type of opportunistic stock-drop, fraud-by-hindsight case that the PSLRA was designed to stop.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO SHOW ANY ACTIONABLE MISSTATEMENTS.

*The statements are forward-looking.*  The Opposition ("Opp.") asserts the challenged statements are "simply not forward-looking."  Opp. 7.  But Plaintiffs entirely ignore their own alleged definitions of inventory terms, which, as Defendants explained, show the statements to be forward-looking.  *See* Obj. 6-8; ¶¶74-78.  Plaintiffs do not even attempt to counter that these terms allegedly conveyed an assessment that current inventory could be sold at sufficient prices *in the future when it was sold*.[1]  Nor do Plaintiffs dispute that even a large volume of inventory may be "healthy" and "well-positioned" as long as it is expected to be sold at sufficient prices over time, which could be months or even years depending on the product.  Plaintiffs even expressly allege that "[i]nventory management … is dynamic" and requires that retailers "*predict how much inventory will be needed to meet demand going forward*"—*i.e.*, predict the future.  ¶77.

Plaintiffs' efforts to distinguish *Aetna* and *Avaya* are unavailing.  Plaintiffs assert that *Aetna* does not apply because it was possible to ascertain whether DSG's inventory was actually healthy or well-positioned at the time the statements were made—but fail to explain how that could be possible without knowing the future prices at which products were sold.  *See* Opp. 7.  It is also no distinction that the *Aetna* plaintiffs admitted "that the statements conveyed that 'these policies will be profitable,'" *id.*—Plaintiffs similarly allege here that "[e]xcess or toxic inventory" "result[s] in lower profit margins," ¶76, meaning that "healthy" inventory necessarily conveys an impact on

---

[1] *E.g.*, ¶76 ("excess inventory" is inventory that "*must be sold* for lower prices"); ¶78 (a "flow" issue occurs when a retailer "must lower prices … or the inventory *will fail to sell*").

future profitability.  *See In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 280-81 (3d Cir. 2010).[2]

And just as in *Avaya*, any hypothetical present-tense aspects of the statements "cannot meaningfully be distinguished from the future projection of which they are a part."  *Inst'l Invs. Grp.* v. *Avaya, Inc.*, 564 F.3d 242, 255 (3d Cir. 2009).  The statements did not "justify the []
projections in terms of any particular aspect" of current circumstances; they said only that "whatever th[e] situation is, it makes the future projection attainable"—*i.e.*, that management assessed DSG would be able to sell its outdoor and fitness inventory over time without material impact on overall profitability.  *Id.*  Any present-tense aspect would also be protected as an "assumption[]" relating to the forward-looking assessment.  Obj. 8; 15 U.S.C. § 78u-5(i)(1)(D).

To the extent Plaintiffs are claiming that the statements are not forward-looking simply because they use words like "is" instead of "will be," both *Aetna* and *Avaya* involved "present-tense language" that conveyed a forward-looking assessment.  *Aetna*, 617 F.3d at 279-82; *Avaya*, 564 F.3d at 254-56.  Moreover, Plaintiffs offer no answer for how any reasonable investor could have interpreted the statements as not forward-looking, when DSG repeatedly, expressly informed investors that statements regarding "the belief that our inventory is healthy and well-positioned" were forward-looking.  *See* Obj. 8-9.[3]

***The statements are inactionable opinions.***  In the paragraph-and-a-half that Plaintiffs devote to this point, they fail to address their own alleged definitions of inventory terms, the

---

[2] The disclosed "lump" in apparel does not "refut[e]" that statements about "healthy" inventory were forward-looking.  *See* Opp. 7.  The problem in apparel was that spring inventory arrived late, on top of fall inventory.  ¶44.  Since apparel (unlike outdoor and fitness) quickly loses value as seasons and trends change, management assessed that it needed to discount that out-of-season inventory.  DSG made a different assessment as to outdoor and fitness products, which (as DSG disclosed) "don't go obsolete" and management planned to "buy around" for "next year."  Obj. 4.

[3] As explained, "no issues with flow" also referenced at least a year-long time frame.  Obj. 8.  As to statement (14), cautionary language may be incorporated by reference.  *See* Obj. 9; *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2015 WL 4469143, at *12 (D.N.J. 2015).

framework for assessing opinion statements set forth in controlling precedents (*Omnicare* and *City of Warren*), or this Court's decision in *Mylan*—all of which show the statements are inactionable opinions for reasons Defendants already demonstrated (and that go unanswered).[4]

Plaintiffs instead summarily assert that, even if opinions, the statements were "issued without a genuine belief or reasonable basis," citing *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, 543 F.3d 150, 166 (3d Cir. 2008). Opp. 9. Even assuming this pre-*Omnicare* statement was the proper framework for analysis (it is not), Plaintiffs fail to satisfy this standard. Plaintiffs conclusorily point to CW accounts of "excess inventory," "store visits," and alleged internal reporting. *Id.* But, as noted, Plaintiffs do not dispute that ***even a large volume of inventory can be "healthy"*** as long as management expects it can be sold at sufficient prices over time, *see* Obj. 2, 7, 21-24—particularly for a seasonal business (as Plaintiffs allege for outdoor products) and where inventory can be held for long periods without going obsolete (as Defendants disclosed for outdoor and fitness and Plaintiffs do not allege was false). Because Plaintiffs allege ***nothing*** about Defendants' expectations for demand, pricing, competition, profitability, or time inventory could be held, there are no particularized facts from which to infer that Defendants did not genuinely believe their assessments or that they lacked a "reasonable basis." Plaintiffs also do not dispute that many statements referred to DSG's ***overall, nationwide*** inventory (*i.e.*, across all businesses), *e.g.*, ¶¶140-41, 145, 153-54, 159, 162, yet fail to identify any allegations showing Defendants ever believed that outdoor and fitness would affect overall inventory health.

Plaintiffs also fail to explain how these opinions could be actionable given DSG ***disclosed*** that demand for outdoor and fitness products had declined; that DSG had "a lot" of inventory in

---

[4] *See* Obj. 10-13 (citing *Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015); *City of Warren Police & Fire Ret. Sys.* v. *Prudential Fin., Inc.*, 70 F.4th 668 (3d Cir. 2023); *In re Mylan N.V. Sec. Litig.*, 2023 WL 3539371 (W.D. Pa. 2023)).

"outdoor and fitness," and management's plan to address the issue by "buying around" inventory for "next year," since they assessed the products would not "go obsolete," *see* Obj. 4, 8; and that statements about inventory health were forward-looking and subject to many risks.[5]

*The statements are corporate optimism.*    Plaintiffs claim the statements were not immaterial optimistic statements because they were on subjects of investor concern, in "response to analyst questions," and DSG's stock declined after the "truth" was revealed.  Opp. 8.  But high-level, non-specific statements have been held inactionable even when those circumstances were present.  *E.g.*, *Aetna*, 617 F.3d at 275-76, 284 (statements regarding "'disciplined' pricing" puffery even though issued in response to analyst questions and despite stock decline); *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009).  The statements are immaterial optimism because of their high-level, subjective, non-specific nature, and given DSG's multiple other disclosures and cautionary statements.  *See* Obj. 13-14.

*Plaintiffs' cases are inapposite.*  Plaintiffs cite several (largely out-of-circuit) cases that they allege "uph[eld] similar statements."  Opp. 6.  Plaintiffs' cases involve materially different facts and far more robust, specific, and particularized allegations of falsity and scienter.  In *In re Urb. Outfitters, Inc. Sec. Litig.*, for example, defendants publicly reported "strong sales trends and decreased markdowns," when actually "sales trends were decreasing" and "markdowns were increasing," 103 F. Supp. 3d 635, 646-47 (E.D. Pa. 2015)—Plaintiffs fail to particularly allege any such specific, directly contradictory facts here.  In *Novak* v. *Kasaks*, defendants claimed inventories were "in good shape" and "under control," while knowingly misstating inventory valuations in violation of GAAP and company policy, and despite knowing certain inventory was

---

[5] *See* Obj. 8-9.  Plaintiffs' suggestion that statements cannot be opinions unless they are forward-looking is baseless given *Omnicare* itself involved the opinion that "our contract[s] … are in compliance with appliable federal and state laws."  *Omnicare*, 575 U.S. at 179.

"worthless" and "discuss[ing] the need to mark down inventory but refus[ing] to do so." 216 F.3d 300, 304, 311-12 (2d Cir. 2000). There are no allegations here of misreported inventory values or that Defendants discussed or believed inventory would have to be marked down.[6]

## II.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER.

### A.    Plaintiffs fail to show that any stock sales support motive.

*Timing of Sales.* As Defendants demonstrated, sales following earnings releases show "compliance with the securities laws." *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 312 (D.N.J. 2001); *see also, e.g.*, *In re Astea Int'l Inc. Sec. Litig.*, 2007 WL 2306586, at *15 (E.D. Pa. 2007) ("very likely … stock sales following the positive third quarter results merely reflect compliance"); Obj. 15-16. This does not, as Plaintiffs claim, "seek[] a safe harbor for such sales," Opp. 11—it reflects the business reality that times when executives do not have material non-public information (and thus can lawfully trade) will tend to follow public announcements, and thus such timing is not necessarily suspicious.[7] And while a Rule 10b5-1 plan (which is not legally required) may help rebut motive, not having one does not support motive where (as here) trading is not suspicious. *See* Reply 10.

Moreover, the timing of Mr. Stack's only sales is explained by his exercise of options about to expire. *See* Obj. 16-17; *Astea*, 2007 WL 2306586, at *13-14 (no inference of motive where options expiring the next year). Plaintiffs are wrong that this is a "factual question" that the Court cannot consider. Opp. 14. The Form 4 that reflects the sales and expiration is incorporated in and integral to the Complaint, *see* Ex. 38 at 4, and such documents are routinely considered on motions

---

[6] *See also, e.g.*, *In re Finisar Corp. Sec. Litig.*, 646 F. App'x 506, 507 (9th Cir. 2016) (defendant "denied having knowledge of an inventory build-up" by customers when he had learned of inventory build-up during customer negotiations); *KBC Asset Mgmt. NV* v. *3D Sys. Corp.*, 2016 WL 3981236, at *5 (D.S.C. 2016) (defendants stated company had a "healthy" inventory backlog driven by new products, when backlog was not in anticipation of a shift to new products).
[7] Plaintiffs' cases fail to consider this compliance aspect. *See* Opp. 10-11.

to dismiss.[8]  As for the criticism that the Individual Defendants did not retain the shares from their option exercises, many cases decline to infer motive from such sales because option exercise and sale of the shares is an intended part of compensation (thus not suspicious), and proceeds also can be used to cover the exercise price.  *See* Obj. 16-17.

    ***Size of Sales.***  Faced with the motive-refuting circumstance that the Individual Defendants all retained large holdings of DSG securities (collectively over 98%), *see* Obj. 15-17; App. B, Tbl. 1(a),[9] Plaintiffs seek to rely on "stock ownership guidelines," Opp. 12.  The guidelines were not pled in the Complaint, and (i) the guideline amount did not apply yet to Mr. Gupta, since he had not been CFO for three years, *see* Reply 12; ECF No. 63-5 at 43; (ii) Plaintiffs' calculations apparently fail to include unexercisable options as the guidelines require, *id.*; (iii) Plaintiffs cite no case considering such guidelines; and (iv) all Individual Defendants retained sizable holdings, many multiples above the guidelines, *see* App. B, Tbls. 1(a)-(b).  Plaintiffs' comparison of sales proceeds to compensation is meaningless because they allege nothing about profits (which are inferably less given taxes, fees, and exercise prices).  *E.g.*, *Martin* v. *GNC Holdings, Inc.*, 2017 WL 3974002, at *5, *15 (W.D. Pa. 2017), *aff'd*, 757 F. App'x 151 (3d Cir. 2018).[10]  DSG's repurchases also "make no economic sense" if it believed the stock was inflated.  *Frankfurt-Tr. Inv. Luxemburg AG* v. *United Techs. Corp.*, 336 F. Supp. 3d 196, 225 (S.D.N.Y. 2018).

---

[8] *E.g.*, *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 540-41 (3d Cir. 1999); *Avaya*, 564 F.3d at 279 & n.57; *In re Merck Co., Inc., Sec., Derivative & "ERISA" Litig.*, 2006 WL 8460903, at *4 (D.N.J. 2006); *Astea*, 2007 WL 2306586, at *14 & n.16.

[9] Plaintiffs have never contested the accuracy of App. B.  It is also appropriate to consider Defendants' sales collectively.  *E.g.*, *Party City*, 147 F. Supp. 2d at 313-14; *In re Radian Sec. Litig.*, 612 F. Supp. 2d 594, 612-13 (E.D. Pa. 2009).  If Mr. Stack was incented to retain Class B shares, as Plaintiffs assert, one would expect him to sell even more Class A, but he ***increased*** his holdings including vested options.  *See* App. B., Tbl. 1(b).

[10] As for Mr. Gupta, if sales-to-cover are consistently excluded, as Plaintiffs now claim is correct, he sold 14,294 shares (not 35,524), or less than 10% of his holdings by Plaintiffs' math, for proceeds of only $1.9 million, *i.e.*, ***less*** than his total compensation.  *See* Reply 11 n.18.

*Moosejaw.* Having alleged Moosejaw was in the "outdoor category" and similar enough to the alleged excess products to support scienter, ¶232, Plaintiffs cannot now claim it "irrelevant to scienter," Opp. 14 n.15. Even if the products were not exactly the same, the reasonable inference is that purchasing Moosejaw showed DSG's confidence that consumers had made "lasting lifestyle changes" and there would continue to be strong demand for outdoor products. *See* Obj. 21-24.

**B.        Plaintiffs fail to show they otherwise plead a strong inference of scienter.**

The Opposition fails to cure the fundamental flaw with all of Plaintiffs' scienter allegations—they fail to show that any information Defendants received demonstrated that any of the statements were false. Much of the Opposition rehashes Plaintiffs' internal reporting and CW allegations. *See* Opp. 15-17. But Plaintiffs fail to explain how these allegations support scienter, when they fail to particularly allege any particular metrics or reports that contradicted Defendants' statements, and none of the reporting allegedly included the information or analysis necessary to assess inventory health—which requires not just a view of current sales or inventory (particularly for a seasonal business), but a strategic assessment of future demand, pricing, competition, profitability, and how long inventory could be held. And as Defendants already explained, the CW reports that a small number of stores contained a large quantity of inventory and needed storage do not mean that inventory was "excess"—it is consistent with DSG's plan to "buy around" inventory, the seasonal nature of the business, and the dramatic 50% growth in DSG's business without increasing store space or distribution centers. *See* Obj. 21 n.17.

Even assuming that internal reports showed elevated outdoor and fitness inventory and slowing demand (which DSG disclosed and is expected in the off-"peak" season, *i.e.*, nearly the entire Class Period), and that outdoor and fitness was among "bottom performing categories" (on some unidentified metric), this does not mean any statements were false. All of that could be true and yet DSG's overall, nationwide inventories across all businesses could still be assessed

"healthy" and "well-positioned," and with no "flow" issue, as long as management assessed that outdoor and fitness inventory could be sold over time without material impact on DSG's overall profitability. Because Plaintiffs allege nothing about Defendants' assessments regarding future sales and pricing, or how long inventory could be held, it is impossible to infer from Plaintiffs' allegations, individually or holistically, that Defendants did not sincerely hold their views.

That Plaintiffs now claim these judgments were incorrect, or that CWs (lower-level employees lacking expertise or enterprise-wide perspective but with hindsight knowledge) supposedly had different views (never communicated to Defendants), falls far short of pleading scienter. Plaintiffs fail to allege even recklessness, which requires "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care," much less the **actual knowledge required here** given the statements were forward-looking. *Advanta*, 180 F.3d at 539-40; *Mun. Emps.' Ret. Sys. of Mich.* v. *Pier 1 Imps., Inc.*, 935 F.3d 424, 432 (5th Cir. 2019) ("[I]nventory write downs … can easily arise from negligence, oversight or simple mismanagement, none of which rise to the standard necessary to support [] securities fraud[.]").[11]

Defendants' post-Class Period statements, *see* Opp. 18, show only what Defendants understood **after** the Class Period. Courts consistently find such "[h]indsight statements … are insufficient" to show scienter. *Hertz*, 2015 WL 4469143, at *19; *see also, e.g.*, *Avaya*, 564 F.3d at 275; *In re Five Below, Inc. Sec. Litig.*, 2025 WL 2447794, at *10 (E.D. Pa. 2025). As for temporal proximity, Opp. 20-21, this is "weak circumstantial evidence," *Pier 1*, 935 F.3d at 436— **particularly here, given the short "peak" summer season** when DSG's expectations could change rapidly. *See, e.g.*, *id.* (no scienter where statements made one month before disclosure); *Pearlstein*

---

[11] Plaintiffs refer to Hardlines as "40% of overall sales," Opp. 21, but outdoor and fitness was only a portion of Hardlines (the size of which Plaintiffs do not allege). *See* Obj. 12 n.10.

v. *BlackBerry Ltd.*, 93 F. Supp. 3d 233, 247 (S.D.N.Y. 2015) (one month), *aff'd*, 660 F. App'x 23 (2d Cir. 2016); Mot. 39.

The Opposition fails to show any cogent or compelling inference of fraud. Plaintiffs wish to avoid *Pier 1*, but its holding is persuasive and equally applicable here: "***[k]nowledge of high inventory does not necessarily equate to knowledge of significant markdown risk***." 935 F.3d at 432 (emphasis added).[12]  Simply alleging that DSG had a lot of outdoor and fitness inventory (which DSG disclosed) is not enough, yet that is essentially all Plaintiffs allege. In context of all the allegations and statements, the far more (and indeed only) compelling inference is that Defendants sincerely believed their disclosed assessments and that DSG could successfully implement the disclosed plan to "buy around" outdoor and fitness inventory, and only determined later, as market conditions evolved and DSG entered the "peak" season, to discount inventory.

## III.    THE TD COWEN REPORT IS NOT A CORRECTIVE DISCLOSURE.

Plaintiffs' effort to characterize the TD Cowen report as a "corrective disclosure" is a transparent bid to increase potential damages by seizing on a report that has nothing to do with the alleged fraud but happened to coincide with an alleged 6.8% stock decline (and a negative announcement by Foot Locker). ¶10; Obj. 24-25.  The report speaks for itself:  It says nothing about excess inventory in outdoor and fitness.  It is based on broad macroeconomic trends.  The analyst expresses ***confidence*** about DSG's margin expansion.  Deeming this report a corrective disclosure would expand that term beyond reasonable recognition. *See* Mot. 43-45; Reply 15.

---

[12] As for Plaintiffs' purported distinctions, Opp. 9, 23, Defendants here also disclosed that DSG had "a lot" of inventory and faced inventory-related risks; the lack of any allegations about expectations concerning how long products could be held is just as defeating of scienter as the contradictory allegations in *Pier 1*; and Plaintiffs also allege misstatements about markdown risk. As for the 2022 "peak" season, Opp. 22, Plaintiffs allege nothing about sales in that period or showing that it was not possible to successfully "buy around" inventory and sell it over time.

Dated:  October 28, 2025

Respectfully submitted,

**JONES DAY**

/s/ *Margaret C. Gleason*
Rebekah B. Kcehowski  (PA 90219)
Margaret C. Gleason  (PA 201742)
500 Grant Street, Suite 4500
Pittsburgh, Pennsylvania  15219
Tel:  412-391-3939
Fax:  412-394-7959
rbkcehowski@jonesday.com
mcgleason@jonesday.com

**WACHTELL, LIPTON, ROSEN & KATZ**
William Savitt  (*pro hac vice*)
Lauren M. Kofke  (*pro hac vice*)
Alison B. Brockman  (*pro hac vice*)
51 West 52nd Street
New York, New York  10019
Tel:  212-403-1000
Fax:  212-403-2000
WDSavitt@wlrk.com
LMKofke@wlrk.com
ABBrockman@wlrk.com

*Counsel for Defendants DICK'S Sporting Goods, Inc., Edward W. Stack, Lauren R. Hobart, and Navdeep Gupta*

-11-

**CERTIFICATE OF SERVICE**

I, Margaret C. Gleason, hereby certify that on October 28, 2025, I electronically submitted a true and correct copy of Defendants' Reply in Further Support of Objections to Magistrate Judge's Report and Recommendation with the Clerk of Court for the United States District Court for the Western District of Pennsylvania, using the CM/ECF system, which will send notification of such filing to the attorneys entitled to notice who are registered users of ECF.

Respectfully submitted,

/s/ *Margaret C. Gleason*
Margaret C. Gleason

*Counsel for Defendants DICK'S Sporting Goods, Inc., Edward W. Stack, Lauren R. Hobart, and Navdeep Gupta*